May I please the Court, my name is Margaret May and I represent the Plaintiff Appellant William Maedor. When prison officials in the mailroom at Pleasant Valley State Prison I'm sorry, I'm going to ask you to speak a little more slowly into the microphone and a little louder if you want to communicate with this Court. Yes, Your Honor. When prison officials in the mailroom at Pleasant Valley State Prison opened inmate William Maedor's mail outside of his presence, they infringed on his First Amendment rights. The envelope that was opened was mail that Mr. Maedor had sent to the California Court of Appeal. Because it was incorrectly addressed, the mail was returned to Mr. Maedor.  No, the contents of the envelope are not in the record. But we know that this was not a document that was being sent from the Court. It was outgoing mail being sent by Mr. Maedor to the Court of Appeal. Outgoing mail to a Court such as this implicates an inmate's First Amendment right to send and receive mail and an inmate's First Amendment right to petition the government for redress of grievances. Interference with outgoing court mail creates a chilling effect on the exercise of these First Amendment rights. This is not an issue of privileged communication between an inmate and his attorney. Instead, this is an issue of interference with an inmate's direct exercise of his right to petition the government. As this Court held in Bradley v. Hall, the reality and substance of any of a prisoner's protected rights are only as strong as his ability to seek relief from the courts or otherwise petition the government for redress of deprivation of his rights. In this instance, it was an error. They told him it was an error. They told him they didn't read it. What was the chilling effect? The chilling effect was the actually against the policy of the prison, right? The prisoner's policy is not to open such mail. That's correct. There are. Made a mistake. So just a mistake is a constitutional issue? Making a mistake is a constitutional issue? Is that your position? Yes. In this instance, the opening of the mail. Why should that ever be the case, that you could bring a constitutional claim on the basis of a mistake? The opening of the mail directly interfered with. No, but a mistake in opening. Is there no room here for a mistake? Is it always a constitutional law? Well, even one instance of the interference with. No, but if it's done by mistake. In other words, you're ultimately relying on a chilling effect, which means he's going to be concerned about doing this in the future. But he won't be concerned about doing it in the future because the policy is not to do it. And they told him it was a mistake. And they told him essentially, and we won't do it again. So where's the chilling effect? But if he knows that this occurrence could happen, then there would be a chilling effect on his. Well, everybody knows that something might happen to the mail by mistake. Prisoners aren't any different from the rest of us. It was because it was the direct interference with this, with his exercise that. It was what? The direct interference. Was it an intentional interference? No. All right. Well, what was the interference? Does the record say that they said, and we didn't read it? Yes. All right. So if they didn't read it, then what was the interference? They opened it and they made a mistake. And then they didn't read it. So there was no direct interference. So then the second possibility is that there was a chilling effect, i.e., on the way he's going to be afraid to send something in the future, not because there was a direct effect but because he thought.  Well, a chilling effect doesn't require that his First Amendment rights are completely silenced. But if they're affected in any way, then. How are they affected in any way? How is it that if I say to you, look, you know, I wasn't supposed to open it and I didn't read it, and I'm not going to, my policy is not to do this. Why is that going to dissuade me from sending the mail in the future? Because the inmates have so few avenues to exercise this right that any interference, even a single time, can show that there is a future harm to the inmates. Do we have a declaration in the record or anything like that from anybody suggesting that anybody is going to be impacted by an error of this kind? No, there is nothing like that in the record. You will agree with me, won't you, that Kenan v. Hall suggests that mail from courts has contrasted to mail from a prisoner or from the prisoner's lawyer is not legal mail? I agree that that's what Kenan v. Hall held. All right. And then I guess the big question my colleague has ever asked, or has already asked, sorry, is that in this particular instance, everybody admits it's a mistake. The prison regulations suggest it should not happen. The reason for the mistake seems obvious. One cannot question what's in the record even about the reason for the mistake such that one would be able to go around that reason. And so where is the chilling effect? Because if you say it came directly from the courthouse, it's legal mail, or it's courthouse mail, and therefore there is no legal cause for you to have a problem. It's got to be from the lawyer. We know it wasn't from the lawyer, so the only thing you've got is I sent stuff out myself, and so it comes back, and you read it. He didn't allege that he sent it to his lawyer. He sent it to the court, and we have regulations in place which would suggest it doesn't happen. Well, Kenan v. Hall was dealing with incoming court mail instead of outcoming court mail. They didn't. They did not look at it when it was going out. They looked at it when it was coming back. That's the record from the court. It was returned mail, but the contents of the envelope were what Mr. Mader was sending out to the court of appeal. It wasn't actually coming from the court because it never got to the court. That's right. That's correct. It was returned by the post office. So your essential argument is, which we haven't made yet, is why we would distinguish outgoing mail from incoming mail for the court for First Amendment purposes. Yes. Outgoing mail, as this Court has recognized, has different concerns than incoming mail. The security risks with outgoing mail are far diminished, because almost by definition, outgoing mail cannot pose a security risk inside the prison. And this Court, as recently ---- But that's a different issue, right? Because for that purpose, I suppose this is incoming mail, because, I mean, it's theoretically possible that somebody could have concocted this whole thing and put something in this package and claimed that it was really returned mail. I mean, it really has more to do with the question of whether there is more possibility of outgoing mail to a court being confidential in some way than incoming mail. That's correct. Keenan v. Hall was relying on the fact that incoming court mail was likely to be a public document. That is not the case with outgoing court mail, which ---- Well, I would think in either instance, the overwhelming likelihood that it's a public document, but in either instance, it could be something else, because sometimes prisoners write to courts, you know, asking for the appointment of a lawyer or something like that, and the response could be about that. I'm having a hard time seeing why one is different than the other. For that purpose, for purposes of what would be likely to be in it. Well, mail coming from ---- I think mail to a court could have some other kind of document in it. It could be correspondence with the court that is not ever intended to become public. And so can mail coming from a court is what I'm saying. Mail coming from a court could be responsive to the mail going to the court. That is not a public document. And then one coming back might not be a public document either. I'm having a hard time seeing what the difference is. It's more likely that the outgoing mail is not a public document. You have no reason to think that. We're just sort of both speculating. Well, courts have noted that the outgoing mail is much more likely to be not a public document than the ---- Who has noted that? What's the case? The ---- To a lawyer. We've got some on that. Okay. Why don't you sit down and when you come back up you can tell us. Thank you. Good morning, Your Honors. Chris Rebecker, Deputy Attorney General on behalf of Appellee James Yates. Appellant is incorrect in their assumption that the issue in this case is whether or not correctional staff opening an inmate's legal mail amounts to a constitutional violation. The actual issue in this case is whether or not isolated instances of accidental or inadvertent opening of an inmate's legal mail amounts to a constitutional violation. Frankly, the only problem I have with your position is that the reason that you repeatedly give for why this mistake was made is not credible, which is that the ---- somehow the stamps on it obscure the fact that it went to the court. That's not at all true. I mean, I've looked at the envelope. It's just not true. None of the stamps or anything are on top of the ---- in any way obscure the fact that this was sent to the court of appeal. Well, the fact of the matter remains that these correctional mailroom staff get so many letters coming in on a daily basis. I know that. But I'm troubled by the fact that this went up through several layers of internal proceedings, all of which continue to say something that's just not true. Well, if you do look at the envelope, you can tell, though, that it's been marked up a fair amount and that there's a lot of ---- Marked up a fair amount, but it's absolutely 100 percent no doubt clear that it was sent to the clerk's office, court of appeals, 4th Appellate District, Division 2, 303 West 5th Street, San Bernardino, California. No problem reading it. That's true. But at this point, we have to assume that the allegations in the complaint are true, and the allegations in the complaint are that it was opened in error, and that when you look at everything that's been submitted to the court as far as the complaint is concerned, it shows that these are the reasons why this document ---- why this letter was opened, and that it was an error, that the legal mail aspect of it was obscured. It was noted as an error by mailroom staff, and it was immediately sent on to the appropriate channels. So when you look at the actual complaint, we have to assume that it was an error because that's what's alleged in the complaint. The issue as to whether or not isolated instances of opening an inmate's mail amounts to a constitutional violation is not an actual issue that has been addressed by this Court, but it has been addressed by several other courts, including the Second, Seventh, and Tenth Circuit Courts. And in deciding this issue, those courts have held that there is no cause of action for damages under Section 1983 for a single instance of legal correspondence being opened outside of a prisoner's presence. And it's important to look at the analysis ---- Is this legal correspondence? I'm sorry? Is this legal correspondence? Well, actually, that's a good point, because you can't even assume that this is legal correspondence. It was sent out from plaintiff to the Fourth Appellate District. We don't know what actually the contents of that document inside that envelope are. But is it the position of the government in general that letters from a prisoner to a court are covered by the doctrine concerning legal correspondence rather than covered by the doctrine concerning nonlegal correspondence? Under these circumstances, they are considered legal documents. They are? I'm sorry. Meaning that's the regulations? Correct. Okay. Correct. So when you look at the other district ---- You don't have a constitutional position on that question? No, I do not. Actually, it's going to be our position that this was opened in error. If you assume that the facts as alleged in the complaint are true, that this was opened in error, that he did have an entitlement to have somebody, an attorney present before it was opened. So the issue in this case is just going to simply be on the ISD. Have an attorney present or just have himself present? I'm sorry. You're correct. Have himself present. Okay. Himself present when the item was opened. When you look at the reasoning in the other circuit courts, the courts seem to strike some sort of balancing test. They look at the interests of the inmate in his First Amendment right to redress grievances with the court, his interest in contacting and having correspondence with his attorney. They also look at the ---- Does it matter that they didn't read it?  I mean, there could be an actual injury, even by an error. Well ---- I suppose it was actually a letter from his lawyer, and suppose they actually read it and it revealed something that they weren't supposed to know. Well, that's a different issue. In this case, we have an inspection. We don't have an actual reading of the letter. Those are both distinguishable. With an inspection, you're just opening up the envelope to make sure that you can tell what the contents are. If you're actually opening up to read it, then that could be seen as a form of harassment as you're actually getting into the contents of the document. Well, it's a form of harassment. I mean, I gather that they do read incoming mail in prison sometimes, not for ---- because they want to know that stuff's going on, that the guy's not planning an escape or something. It's true. Right. It's true. And it is often the case that inmates will use some sort of colored language, some sort of decrypted language to send that mail. So they do assert the right to be able to read incoming mail, but not this incoming mail. Right. But because of the nature of the legal correspondence. So what I'm asking you is, is the rule that you're asking for a turn in the fact that it wasn't read? And how do we know it wasn't read? Well, we don't know exactly to the extent of how much it was read, frankly. You don't? We just know that it was open. We know that it was recognized as a legal document. And we know that it was ---- I thought that when they gave it to him, they just said it wasn't read. Is that wrong? Well, it apparently wasn't, isn't, because it says the letter was opened by mailrooms ---- this is on the appeal. The letter was opened by mailroom staff based on the content of the letter. The letter was immediately closed. So apparently they didn't read it or at least didn't read enough to know what the content said. That's my assumption, yes. Okay. So when you look at these factors and when you look at the fact that the prison has this overall overriding security and safety concern of the prison, that they need to inspect these incoming letters, and the fact that mistakes, frankly, will happen in the course of a day throughout the prison, that when you balance all of these issues and all of these rights, that isolated instances of this type of conduct do not amount to a constitutional violation. Now, an interesting point that I want to touch on is the fact that appellant seems to believe that this is outgoing legal mail and, therefore, is entitled to a greater constitutional scrutiny than if it were incoming mail. First off, I don't think that that's factually true, because when the letter was outgoing mail, when it was addressed by Mr. Meador and sent out to the Fourth Appellate District, it was outgoing mail and it was not opened, not until it came back to the prison and it was incoming mail. It was addressed at this point, not to the court, but back to Mr. Meador. As it was incoming mail, it was open. So, therefore, it's not outgoing mail. One other issue that I want to address is the request for judicial notice. The request for judicial notice actually highlights appellant's awareness of the fact that the complaint is deficient and the fact that this is just one isolated instance of conduct. And so they try to supplement the complaint by adding these two letters that were mailed four years later at a different prison to show that there isn't just an isolated instance of conduct. This request for judicial notice should be denied based on multiple reasons, first of which is that they ask that the contents of an appeal by a plaintiff be recognized by the court judicially. First off, that's not an appropriate use of judicial notice. Judicial notice can be used in the appellate sense. Do we happen to know whether the second person had the same regulations as the first one with regard to the inappropriateness of doing this? It's my understanding that they do. So what we have here is appellant's attempt to bring in these other two letters. First off, when you look at the use of judicial notice for grievance procedures for appellate procedures at the prison, you can use that only to the extent to show that an inmate filed a grievance or filed an appeal, but you cannot go to the actual specific contents of that grievance. And if you look further at the actual grievance that's submitted by a plaintiff in this case, this grievance wasn't actually even heard. It was rejected. And if you want to look at the actual relevance of these documents, they're not even relevant because it's a different prison. It's the California Correctional Institution, whereas the events in this complaint take place at Pleasant Valley State Prison. So for those reasons, judicial notice should not be granted. And based on the argument that was brought forth by Appelli in our moving papers and based on the fact that this is an isolated incidence of mistaken or accidental opening of an inmate's legal mail, that it does not amount to a constitutional  Thank you very much. Thank you. To answer the court's earlier question, the Sixth Circuit in Salyer v. Brooks decided in 2003, noted that prior decisions from our court have used the term legal mail to include mail from the courts, and have expressed disagreement with an earlier case's rationale that mail from a court is unlawful. That's a different point because our case lost to the contrary on that issue. The mail from a court. Right. So what we were looking for is a case that held that even if mail from a court is not legal mail, mail to a court is, that you don't have such a case. The decision goes on to say we can imagine a situation in which a court corresponds with a prisoner before filing the prisoner's complaint because of some administrative requirement, such as filing an informa pauperis affidavit, paying the filing fee, or signing the complaint, has not been met. In that situation, the complaint is not yet a public record, and prison officials have no legitimate penological interest in reading the correspondence before it is. And then in Keenan v. Hall, the Ninth Circuit relied on a Seventh Circuit case, Martin v. Brewer, that held that mail from a court is almost always a public document. And in that case, Martin v. Brewer, they went on to say that the prisoner, talking about incoming court mail, that the prisoner might fear retaliation for litigation. Complaining about conditions in the prison is far more likely to be engaged by a prisoner's letter to a judge than by a judge's order or other communication. A public document invariably sent to the defendant. So you would suggest that Martin recognizes this difference? Yes, I do. And then just briefly on the issue of a single instance, the Ninth Circuit has never held that a single instance of improper opening of legal mail is not enough to state a constitutional violation. And the request for judicial notice related to the grievance about the opening of two other pieces of mail, we would, if this Court is not inclined to take judicial notice, we would respectfully request this case be remanded so that the district court can consider this additional evidence. Thank you very much. Thank you. Yes. Thanks to both of you for your arguments. The case of Meter v. Pleasant Valley State Prison is submitted, and we will go on
judges: Noonan, Berzon, Smith